USDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-19-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOSEPH R. JORDAN,                                  :

                          Plaintiff,               :        09 Civ. 8561 (ALC)

          -against-                                :        **OPINION AND ORDER**

FEDERAL BUREAU OF PRISONS,                         :
METROPOLITAN DETENTION CENTER,
METROPOLITAN CORRECTIONAL CENTER,   :
USP-MARION, U.S. DEPARTMENT OF
JUSTICE, U.S. ATTORNEY GENERAL,                    :
BRANDON M. WALLER, PAUL COURTNEY,
ANDREW G. PATEL, FEDERAL DEFENDERS  :
OF NEW YORK, LEONARD F. JOY, SABRINA
SHIROFF, NEW YORK STATE BAR                        :
ASSOCIATION, BAR ASSOCIATION OF NEW
YORK CITY, XIAO-KE GAO, ADAM N.                    :
BENDER, and DENISE L. COTE,

                                                   :

                          Defendants.

                                                   :
-------------------------------------------------------------X

**ANDREW L. CARTER, United States District Judge:**

        Plaintiff Joseph Jordan ("Jordan" or "Plaintiff"), an inmate at USP-Marion, a federal

prison in Illinois, brings a laundry list of claims in his complaint that, at one point or another, has

lodged allegations against an ever-changing cast of defendants including various federal

agencies, state bar associations, doctors and a federal judge.

BACKGROUND

**A. Procedural History**

        Plaintiff filed his original complaint in 2009 in the Eastern District of New York. *See*

No. 02 Civ. 2232.  The case was transferred to this jurisdiction on October 8, 2009, at which

time Jordan was ordered to address deficiencies in his Complaint. (Dkt. No. 2).  Jordan filed his

First Amended Complaint on April 2, 2010, after two extensions.  (Dkt. No. 7).  By June 2, 2010, Plaintiff sought leave to "supplement (not amend) the Amended Complaint." (Dkt. No. 9).  The Court denied this request in a November 15, 2010 order and directed Plaintiff to file a second amended complaint by January 10, 2011.  (Dkt. No. 16).  After two further extensions, Plaintiff filed his Second Amended Complaint on August 4, 2011, more than a month after the time granted for his final extension. (Dkt. No. 31).

      In its final state, Jordan's Complaint is a 122-page behemoth alleging claims against the remaining Defendants:  Federal Bureau of Prisons ("BOP"), USP-Marion, Federal Bureau of Investigation Agent Waller, Dr. Xiao-Ke Gao, and Dr. Adam Bender.[1]  In addition, New York Police Department Officer Paul Courtney remains as a defendant but it is not clear whether he was actually served with process. On June 27, 2012, BOP, USP-Marion, and Waller filed a motion to dismiss the complaint.  On July 12, 2012, by and through his attorney, Bender filed a motion to dismiss the complaint.  As Gao has not submitted moving papers, this Opinion reaches only the motions to dismiss filed on behalf of BOP, USP-Marion, and Waller (collectively, the "Federal Defendants") and Bender.

## B. Facts

      The underlying facts are set forth in Judge Jones's order, (Dkt. 37, at 2-7) and will not be reiterated here.  It is sufficient to say that Jordan's allegations are legion but reduce to claims about deprivation of adequate medical care; unhealthful dietary options (including religious

---

[1] On November 7, 2011, the Court *sua sponte* dismissed Metropolitan Detention Center, Metropolitan Correctional Center, U.S. Department of Justice, U.S. Attorney General, Andrew Patel, Federal Defenders of NY, Leonard Joy, Sabrina Shroff, the New York State Bar Association, and the Bar Association of New York City as Defendants for failure to state a claim. The Honorable Denise L. Cote was dismissed on immunity grounds, citing 28 U.S.C. § 1915(e)(2)(B).  (*See* Dkt. No. 37, Nov. 7, 2011 Order of Service).

discrimination and undue restrictions on the vegetarian diet); inhumane conditions of

confinement; and claims stemming from his criminal prosecution and attempted criminal

prosecution against Waller, and arguably Officer Courtney. Jordan's alleges that Bender,

evaluating Jordan after his conviction at the behest of the Court, omitted significant information

from his report on Jordan's neurological condition, knowing that such omissions would harm

Jordan.

## DISCUSSION

### I.    Federal Defendants' Motion to Dismiss

#### A.  Standard of Review

The Federal Defendants argue that this court lacks subject matter jurisdiction and

pursuant to Rule 12(b)(1) seeks dismissal of the Complaint. A case is properly dismissed for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the

statutory or constitutional authority to adjudicate it." *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000).  A court must accept as true all material factual allegations in the complaint,

and will draw inferences favorable to the party asserting jurisdiction.[2] *Sharkey v. Quarantillo*,

541 F.3d 75, 83 (2d Cir. 2008) (citing *Merritt v. Shuttle, Inc.,* 245 F.3d 182, 186 (2d Cir. 2001)

and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

However, courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  Once

---

[2] Other cases suggest that the Court need not draw reasonable factual inferences in favor of
the party asserting jurisdiction, *see, e.g.*, *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131
(2d Cir. 1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.
1992); *Hill v. New York*, No. 12 Civ. 0466 (RWS), 2012 WL 3224328 (S.D.N.Y. Aug. 7, 2012).
Because Jordan is a *pro se* litigant, we will use the more lenient standard.

challenged, the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova*, 201 F.3d at 113. When evaluating subject matter jurisdiction, a court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *Makarova*, 201 F.3d at 113; *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir. 2001).

On a motion to dismiss pursuant to 12(b)(6), the movant alleges that the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, a claim must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss under 12(b)(6), the court will accept the plaintiff's allegations as true, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and must "draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). However, the court need not accept allegations that are merely conclusions of law. *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action"). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez v. Chertoff*, 471 F.3d at 51 (internal quotation marks and citation omitted).

Dismissal for the failure to state claim on which relief could be granted is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim

4

that would entitle the plaintiff to relief.  *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996)

A pleading alleging civil rights violations that is challenged by a motion to dismiss should be

liberally construed with a view to achieving substantial justice.  *See, e.g., Gregory v. Daly,* 243

F.3d 687, 691 (2d Cir.2001) (citations omitted).  This is especially so when filed by a *pro se*

litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

*Lisbon v. Goord,* No. 02 Civ. 3567(HB), 2003 WL 1990291, at *2 (S.D.N.Y. Apr. 29, 2002)

(citing *Elliott v. Bronson,* 872 F.2d 20, 21 (2d Cir. 1989) ("[C]ourts must construe *pro se*

complaints liberally, applying less stringent standards than when a plaintiff is represented by

counsel.").

### B.  The Federal Defendants Are Not Properly Named As Defendants in an FTCA Claim

To the extent Plaintiff alleges tort claims, the Federal Defendants' argument is two-fold.

First, the Federal Defendants claim that they are not properly named as defendants under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2871 *et seq.*  Instead, the FTCA provides suit

against the United States as the "exclusive remedy" for such tort claims.  Next, the Federal

Defendants allege that because Plaintiff did not exhaust his claims through the proper

administrative channels before bringing his lawsuit as the FTCA requires, he cannot sue the

United States because he has not met the stated requirements for its waiver of sovereign

immunity.

Under the FTCA, suits may not proceed against federal agencies; rather the plaintiff must

sue the United States for relief under the FTCA.  FTCA requires a would-be plaintiff to seek

remedy directly from the agency before filing suit against the United States.  *See* 28 U.S.C.

2675(a) ("An action shall not be instituted upon a claim against the United States for money

damages for injury or loss of property or personal injury or death caused by the negligent or

wrongful act or omission of any employee of the Government while acting within the scope of

his office or employment, unless the claimant shall have first presented the claim to the

appropriate Federal agency and his claim shall have been finally denied by the agency in

writing.").

BOP and USP-Marion are federal agencies within the meaning of the FTCA. *See* 28

U.S.C. § 2671 (" 'Federal agency' includes the executive departments, the judicial and

legislative branches, the military departments, independent establishments of the United States,

and corporations primarily acting as instrumentalities or agencies of the United States. . .")

Similarly, Agent Waller, as an agent of the FBI, is an employee of the government for FTCA

purposes. *Id.* ("'Employee of the government' includes officers or employees of any federal

agency").  Thus, the Federal Defendants are not properly named as defendants and must be

dismissed for any FTCA claims.

### C. The Proper Defendant—the United States—Must Be Dismissed For Lack of Subject Matter Jurisdiction

The FTCA requires a claimant to have "first presented the claim to the appropriate

Federal agency and . . . been finally denied by the agency in writing."  *See* 28 U.S.C. 2675(a).

Plaintiff filed his Second Amended Complaint on August 4, 2011, while housed in the

Communication Management Unit (CMU) at USP-Marion in Marion, Illinois, a BOP prison.

### 1. USP-Marion/BOP Grievance Policy

As the rest of the prisons within the BOP, USP-Marion requires a four-step

administrative remedy process to all inmates.  The first step requires the inmate to report the

issue informally to the staff according to the procedures for informal resolution set forth by the

prison warden.  28 CFR § 542.13.  Next, the inmate must file a Request for Administrative

Remedy called a "BP-9" with the Warden.  28 CFR § 542.14.  Both informal resolution and

submission of the BP-9 are to occur within 20 days of the occurrence of the grievance.  *Id.*

Third, the inmate must file an appeal, termed a "BP-10" with the appropriate Regional Director.

28 CFR § 542.15.  Fourth, an inmate must file an appeal, a "BP-11" with the BOP's General

Counsel.  *Id.*  The BOP's General Counsel has 40 days to respond to a BP-11.  *See* 28 C.F.R. §

542.18.  If the inmate does not receive a response within the time allotted for reply, including

extension (20 days at the institution level, 30 days at the regional level, or 20 days at the Central

Office level), the inmate may consider the absence of a response to be a denial.  *Id.*  Only then

may an inmate seek relief from the Court.

The burden is on the plaintiff to both plead and prove compliance with the statutory

requirements. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182, 56 S.Ct. 780,

782, 80 L.Ed. 1135 (1936); *Altman v. Connally,* 456 F.2d 1114, 1116 (2d Cir. 1972).  In the

absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's

claim. *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983).

## 2.  **Jordan Has Not Exhausted His Claims, A Prerequisite to Relief Under FTCA**

As it stands, Jordan did not file his first administrative claim until long after he filed his

original complaint and did not complete the BOP's four-step administrative process for any of

his claims until after he had already filed his second amended complaint.  (See Supp. Decl of

Claudia Colvin).  Thus, he did not achieve exhaustion *before* seeking judicial relief.

Because he has not satisfied the exhaustion requirement, Jordan cannot proceed in a case

against the proper defendant—the United States—which does not waive sovereign immunity for

7

tort claims unless the strict requirements of the FTCA allowing suit are met. Without waiver of sovereign immunity, this Court does not have subject matter jurisdiction to hear the case against the United States.

### D. This Court Lacks Subject Matter Jurisdiction Over the Constitutional Claims Against BOP, USP-Marion and Waller in His Official Capacity

The Federal Defendants' argument is similar for the constitutional claims to the extent Jordan makes constitutional claims under § 1983. Where Jordan seeks monetary damages, the Federal Defendants contend that BOP and USP-Marion and Waller in his official capacity cannot be sued for money damages because it is a suit against the United States. Where Jordan seeks equitable relief, BOP and USP-Marion contend that he is barred for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997 *et seq.* Waller alleges that Plaintiff does not have standing to sue for equitable relief against him in his official capacity.

### 1. This Court Lacks Jurisdiction Over BOP, USP-Marion and Waller for Monetary Damages

A *Bivens* claim alleging violation of a constitutional right may be brought against a federal officer in his individual capacity. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2000 (1971); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994). However, a *Bivens* claim against a federal agency is precluded because it is, at bottom, a suit against the United States for monetary damages, which is barred under the doctrine of sovereign immunity. *See Robinson*, 21 F.3d at 510. Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); *Federal Housing Administration v. Burr,* 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724

8

(1940). It has not waived its sovereign immunity in cases for monetary damages on constitutional claims. Thus, Jordan's *Bivens* claims against the BOP, USP-Marion and Waller in his official capacity are dismissed on the grounds of sovereign immunity. Because sovereign immunity is jurisdictional in nature, *see United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941), this court lacks subject matter jurisdiction to the extent Plaintiff seeks monetary damages for constitutional claims and must dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1).

### 2. This Court Is Barred From Hearing Constitutional Claims Against the BOP and USP-Marion for Equitable Relief

BOP and USP-Marion must also be dismissed as defendants for any equitable relief Jordan seeks concerning his conditions of confinement and other issues in prison that might be construed as constitutional claims.

### a. Administrative Exhaustion Under the PLRA

In relevant part, the Prisoner Litigation Reform Act ("PLRA") reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C.A. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 594 U.S. 199, 211 (2007). Exhaustion is an affirmative defense. *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009). Therefore, "[d]ismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate . . . where non-exhaustion is apparent from the fact of the complaint." *Roland v. Smith*, No. 10 Civ. 9218 (VM), 2012 WL 601071, at *2 (S.D.N.Y. Feb. 33, 2012).

The Second Circuit interprets PRLA to require " 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.'" *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)) (emphasis in original). Generalized complaints may not be used in lieu of the process set forth by BOP to address grievances. *See Johnson v. Killian*, 680 F.3d 234, 239 (2d Cir. 2012) (rejecting the proposition that "generalized complaints regarding the conditions of an inmate's confinement will suffice to shortcut the administrative remedy process"); *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ( "[A]fter *Woodford*, notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.'"") (quoting *Woodford*, 126 S.Ct. at 2388). Similarly, Jordan's alleged repeated verbal complaints do not amount to exhaustion.

A court may grant a motion to dismiss for failure to exhaust administrative remedies if the three-part analysis of *Hemphill* is satisfied. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). The Court may grant a motion to dismiss if  considers whether administrative remedies were actually available to the prisoner. Second, the Court considers whether defendants forfeited the affirmative defense of non-exhaustion or if the defendants' own actions estop them from raising exhaustion as a defense; and (3) "special circumstances" have been alleged excusing failure to comply with the administrative procedure. *Id.*

### b. Jordan Has Not Exhausted His Claims Under PLRA

Plaintiff is an inmate at USP-Marion, a federal prison in Illinois as he was at the time he filed his Complaint. Thus, he is a "prisoner" under the PLRA, and the exhaustion requirement applies to him.

Application of the *Hemphill* analysis is fatal to Plaintiff's claims. Jordan alleges that he was not shy about voicing his complaints to prison staff and does not allege that he suffered any repercussions or violence because of it. *See, e.g., id.* at 688 (where appellant alleged that prison officials physically attacked him and threatened him with more violence if he filed a grievance, "we cannot say at this time that the remedies that Hemphill failed to pursue were actually available to him"). If Plaintiff was dissatisfied with the responses he received to his informal complaints, he had to exhaust the subsequent levels of the administrative process before turning to the courts.

The second and third parts of the *Hemphill* are equally unavailing for Plaintiff. Since Defendants raised exhaustion as a defense in their Motion to Dismiss, they have not waived or forfeited the defense. Turning to whether Defendants are estopped from citing non-exhaustion, Plaintiff does not readily claim that there were barriers to filing grievances. Indeed, he filed them with ease and consistency, but only after he started the litigation. There are no entries of administrative complaints before May 2011. (*See* Dkt. 71, Supplemental Aff. of Crista Colvin). Due to the lack of clarity regarding these allegations, Defendants should not be estopped from raising exhaustion as a defense.

Finally, no special circumstances have been alleged that prevented Plaintiff from following the administrative procedure. Thus, he cannot satisfy the PLRA's exhaustion requirement as to his claims about prison conditions. Consequently, any equitable constitutional claims against the Prison Defendants must be dismissed for lack of subject matter jurisdiction.

11

### E. Jordan's Claims Against Agent Waller for Equitable Relief in His Official Capacity Must Be Dismissed For Lack of Standing

Waller contends that Plaintiff's claims against him in his official capacity should be dismissed because Plaintiff does not have standing to sue. "[T]he irreducible constitutional minimum of standing contains three elements," namely (1) "injury in fact," invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'; (2) a causal connection between the injury and the conduct complained of--the injury has to be "fairly ... trace[able] to the challenged action of the defendant; and (3) likeliness that the injury will be "redressed by a favorable decision" from the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136 (1992); *U.S. v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006).  Because Jordan seeks remedies for past harms that are not ongoing, he cannot show injury that may be redressed by the court. *Schwimmer v. Kaladjian*, 834 F. Supp. 93, 97-98 (S.D.N.Y. 1993) (citing *O'Shea v. Litttleton*, 414 U.S. 488, 493 (1974)).  Thus he does not satisfy the irreducible standing requirements and his claim for equitable relief must be dismissed.

Moreover, Jordan does not respond to this argument, responding only with further allegations against Waller in his official and individual capacity.  Because he does not address his basis for standing in his opposition brief, Jordan waives any claim for constitutional claims against Waller in his official capacity. *Guzman v. Macy's Retail Holdings, Inc.*, No. 09 Civ. 4472(PGG), 2010 WL 1222044, at *8 (S.D.N.Y. Mar. 29, 2010) ("[F]ailure to adequately brief an argument constitutes waiver of that argument" at motion to dismiss stage) (citing *Raniola v. Bratton*, 243 F.3d 610, 613 n. 1 (2d Cir.2001)).

12

### F.  Claims Against Waller In His Individual Capacity Should Be Dismissed

Waller alleges that Jordan failed to state a claim for the claims against Waller in his individual capacity.  To the extent that Plaintiff alleges Fourth and Fifth Amendment claims based on his conviction, these claims fail to state a claim.  Any alleged false statements Waller made in the warrant "does not constitute a Fourth Amendment violation unless it is made "knowingly and intentionally, or with reckless disregard for the truth," and is "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676 (1978).  While Jordan alleges the former element vociferously, Compl. §§ VE2, VE3, he fails to allege why these false statements were necessary to probable cause.

But more than anything, these allegations go to Jordan's underlying criminal conviction whose validity cannot be challenged in the absence of expungement, reversal or invalidation. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Hardy v. Fischer*, 701 F. Supp. 2d 614, 620 (S.D.N.Y. 2010).  The same is true of Jordan's claims for obstruction of justice claims pursuant to the Fifth Amendment.  Because Jordan has not alleged any invalidation of his conviction, he cannot make a claim for relief under § 1983.

Jordan also fails to state a claim to the extent he claims deprivation of property under the Fourth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (even intentional and unauthorized confiscation of property "does not constitute a violation of ... the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available").  Jordan had statutory post-deprivation remedies for his alleged loss of personal property. *See, e.g.*, 31 U.S.C. § 3724(a).  That Jordan did not make use of the post-deprivation remedies does not change the fact that he cannot allege a

13

constitutional violation under the Fourth Amendment. Jordan fails to state a claim against

Waller in his individual capacity for monetary damages and these claims must be dismissed.

### G. Jordan's Claims for Injunctive Relief Against Waller in His Individual Capacity Are Dismissed for Lack of Subject Matter Jurisdiction

The injunctive relief that Jordan seeks can only be obtained from Waller in his official

capacity. *State of Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053 (1963) ("The general

rule is that relief sought nominally against an officer is in fact against the sovereign if the decree

would operate against the latter."); *Howe v. Bank for Intern. Settlements,* 194 F. Supp. 2d 6, 19

(D. Mass. 2002) ("Regardless of the manner by which a plaintiff designates the action, a suit

should be regarded as an official-capacity suit, subject to the defense of sovereign immunity,

when . . . the effect of the judgment would be to restrain the Government from acting, or to

compel it to act." (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15

(1963) (internal quotations omitted)). Thus, injunctive relief against him in his individual

capacity must be dismissed for lack of subject matter jurisdiction.

### H. This Complaint Is Dismissed With Prejudice

Finally, the Federal defendants seek dismissal of the complaint with prejudice, citing both

incurable defects and the extended history of this action. While it is true that dismissal with

prejudice is a severe disposition given its finality, it is warranted where Plaintiff will not be able

to address defects in the complaint. "The problem with [Defendant's] causes of action is

substantive; better pleading will not cure it. . . Such a futile request to replead should be denied."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).[3]

---

[3] This holding is consistent with *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d
Cir.1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss
with prejudice."), where, as here, we have concluded that suit against the proper defendant—the

Moreover, this action has been pending in this district for over three years, primarily due to a *two-year* lag between the filing of the original complaint and the Second Amended Complaint we address here. This action has seen many delays at every juncture as Plaintiff sought multiple extensions (Dkts. 5, 6, 9, 16, 23, 26 and 41) for the filing and service of each of his amended complaints, which still exceeded the time allowed by the extension. Lastly, every new submission either reiterates his previous allegations without substantiation or tacks on new ones. This cannot continue. The Complaint is dismissed with prejudice as to the Federal Defendants.

## II. Dr. Adam Bender

Dr. Bender was retained to perform a medical and neurological examination of Plaintiff. This evaluation took place on September 8, 2009 after Plaintiff had already been convicted and thus, was ostensibly to assist with his appeal. In the Complaint however, Plaintiff does allege that Bender "neglected to report that Mr. Jordan's symptoms (dizziness, extreme pressure in his head, and severe head and neck pain). . . would substantially hinder his ability (when they were present) to do many things, like drive a car and testify in court. . ." Sec. Am. Compl. § VL. But it is unclear what the effect of this allegation is in the Complaint except that "as a result" of Bender and Gao's indifference, "the court has not recognized his need for treatment or the disability that prevented Mr. Jordan from testifying at the aforementioned trial." *Id.*

In his opposition brief, Plaintiff further alleges that he asked Bender if "it was fine for me to take the stand and testify at a time when I was suffering a bout of vertigo, severe head pains

---

United States—would also be futile for failure to follow the strict procedure required by the FTCA.

(and other symptoms)," to which Bender allegedly said "of course, you could not testify in that condition." (Dkt. 65, Jordan Opp. ¶ 51).[4]

### A. Standard of Review

Bender seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, and Fed. R. Civ. P. 56 for summary judgment on the ground that there is no issue of material fact. Additionally, though he erroneously labels it as the review standard for his 12(b)(1) argument, Bender also infers a basis for dismissal under Fed. R. Civ. P. 12(b)(6). *See* Bender Mot. at 4 ("Additionally, the Court may grant dismissal only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").[5]

Despite this lack of clarity, it is proper to evaluate it as a claim for dismissal under 12(b)(6). *See, e.g.*, *Petty v. Goord*, 2007 WL 724648, 3 -5  (S.D.N.Y.,2007) (collecting cases) -- *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 (10th Cir. 2002) ("The crucial element is the substance of the motion, not whether it is labeled a Rule 12(b)(1) motion rather than 12(b)(6)."); *Fraternal Order of Police, Nat'l Labor Council, USPS No. 2 v. U.S. Postal Serv.*, 988 F. Supp. 701, 704 n. 2 (S.D.N.Y. 1997) (finding no prejudice from the conversion of a Rule 12(b)(1) motion into one under Rule 12(b)(6) because the plaintiffs fully

---

[4] Consistent with liberal review of a *pro se* litigant's pleadings, "we will treat plaintiff's opposition papers to the extent that they raise new factual allegations as further amending his amended complaint." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 403 (S.D.N.Y. 2012) (citing *Sommersett v. City of New York*, No. 09 Civ. 5916(LTS), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations") (internal quotation marks omitted).

[5] Indeed, the case he cites in support of this proposition concerned dismissal on 12(b)(6) and 56 grounds, not 12(b)(1). *See Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001).

briefed whether they stated a claim); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 485 (3d ed. 2004) ("It is not relevant how the defense is actually denominated."). The standards of review for a motion for 12(b)(1) and 12(b)(6) are delineated in Section I.A, *supra*.

Additionally, Bender appears to make a motion for summary judgment pursuant to 12(d), (*see* Dkt. 58, Bender Mot. at 4) ("[I]t is understood that although the presentation of the within motion is predicated upon Rule 12, this motion may also be considered by the Honorable Court pursuant to [Rule] 56."). When converting a motion to dismiss to a motion for summary judgment pursuant to Rule 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). To the extent that Jordan has not had an opportunity to address additional facts, summary judgment is not appropriate. *Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir. 1990) ("The essential inquiry ... is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."); *see Peck v. Baldwinsville School Bd. of Educ.*, 7 Fed. Appx. 74, 75-76 (2d Cir. 2001).

However, there is no need for a summary judgment motion at this time. Here, the only basis for a claim against Dr. Bender is his evaluation of Jordan's neurological condition. Dr. Bender's attachment of the evaluation is permissible because Jordan's complaint incorporates it by reference and uses it as the underpinning of the allegations against Bender. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)("[P]laintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (citing *Cortec*

17

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  Thus, the court may

consider the evaluation and need not convert this into a motion for summary judgment.  *Calcutti*

*v. SBU, Inc.*, 224 F.Supp.2d 691, 696 (S.D.N.Y.2002) ("The district court's consideration of

documents attached to, or incorporated by reference in, the complaint, and matters of which

judicial notice may be taken, [does] not convert the motion to dismiss into one for summary

judgment.").

### B. Dr. Bender Was Not A State Actor and Is Not Liable Under Section 1983

The extent of Jordan's allegation against Bender is that he omitted significant information

from his report on Jordan's neurological condition, knowing that such omissions would harm

Jordan.  Construing Jordan's allegations as a section 1983 claim, which requires a preliminary

determination that the defendant acted under the color of state law, Bender argues that he is not a

state actor.  Nevertheless, Bender argues, presumably in the alternative, that he is entitled to an

extension of judicial immunity as a non-state actor acting at the directive of the Court to perform

a medical examination.  He also argues that there is no medical malpractice to the extent the

allegations could be so construed.  Finding that Bender was not a state actor and there was no

basis for a medical malpractice claim, we dismiss the complaint against Bender.

To adequately plead liability under section 1983, the plaintiff must allege: (1) the

defendant acted under color of state law; and (2) as a result of the defendant's actions, the

plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges.

*Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)

Bender argues that he is not a state actor, an argument that he did not act "under color of

state law."  To establish action under color of state law, the defendant's actions must be

"possessed by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d

40 (1988) (quotations omitted). Generally, "a court appointment of a private individual is not

sufficient to establish state action" in this Circuit. *Duboys ex rel. Duboys v. Bomba,* 199

F.Supp.2d 166, 170 (S.D.N.Y. 2002). However, a private actor may act under color of state law

if it is "a willful participant in joint activity with the State or its agents." *U.S. v. Price,* 383 U.S.

787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). Mere cooperation with a state official or

investigatory agency is insufficient to establish state action. *See Scotto v. Almenas,* 143 F.3d 105,

114 (2d Cir. 1998); *San Filippo v. U.S. Trust Co. of N.Y.,* 737 F.2d 246, 252, 256 (2d Cir. 1984).

A private activity may be deemed state action if there is (1) a "close nexus" between the private

and state actors, (2) a product of "state compulsion," or (3) private activity is a public function.

*Turturro v. Continental Airlines,* 334 F. Supp. 2d 383, 394 (S.D.N.Y. 1994).[6]  Under each test,

however, plaintiff has failed to state a claim that Bender's actions were state action for purposes

of section 1983.

### 1.  The State Compulsion Test

To satisfy the "state compulsion test," the plaintiff must show the state "has exercised

coercive power or has provided such significant encouragement, either overt or covert, that the

choice must in law be deemed to be that of the State." *Turturro,* 334 F. Supp. 2d at 394; *Blum v.*

*Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)). To find "[s]tate

action through state compulsion requires actual coercion by a state actor that impacts upon the

---

[6] *Turturro* cites heavily to an influential decision, *Okunieff v. Rosenberg,* 996 F. Supp. 343
(S.D.N.Y. 1998), *aff'd,* 166 F.3d 507 (2d Cir. 1999) (per curiam), *cert. denied,* 528 U.S. 1144,
120 S.Ct. 1002, 145 L.Ed.2d 945 (2000), which is, at the time of this Opinion, under seal, *sub*
*nom Doe v. Rosenberg.*

private physician's decision-making." *Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003).

Although Plaintiff vaguely alleges that Bender limited his evaluation to stay in the government's good graces and thus would not "recommend treatment or make diagnoses that are expensive to the government or might benefit a criminal defendant" (Compl. § VL, at 105), he does not allege actual coercion. Bender's evaluation of Jordan's neurological condition was limited to the listed records of preparation. It was ultimately Dr. Bender's decision which conclusions he would include in his written evaluation, based on the plaintiff's medical data (both self-reported and from Jordan's medical files from prison and a private doctor) and recent MRI films. *See Turturro*, 334 F. Supp. 2d at 395. The question to find state action is not whether the diagnosis was correct but rather whether Dr. Bender's actions were under color of state law. *Id.* The conclusions Dr. Bender reached were his own, and were not compelled by the state. The state compulsion test provides no basis for the plaintiff's § 1983 claims against Bender.

### 2.  The "Close Nexus" Test

Under the "close nexus" test, the plaintiff must show "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.*; *Blum*, 457 U.S. at 1004, 102 S.Ct at 2786. The close nexus requirement "assure[s] that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Id.*

The plaintiff does not allege any state statute or regulation that would provide a close nexus between Bender's evaluation and the court's denial of his appeal. The fact that Bender is a physician licensed to practice medicine in New York does not turn his private actions into actions of the state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 453,

42 L.Ed.2d 477 (1974) ("[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State"); *see Blum,* 457 U.S. at 1008, 102 S.Ct. at 2788 (a state regulation requiring physicians to prepare a nursing home patient discharge plan and complete a form does not convert the discharge decision into action by the state).

The close nexus test can also be met if it involves a situation in which the State has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Turturro,* 334 F. Supp. 2d at 396. But Plaintiff does not allege that the Court or any state entity had input in the conclusions Bender included in his final evaluation. Moreover, a vague and conclusory allegation that Dr. Bender acted in concert with a state actor because the government paid for the evaluation does not suffice to state a § 1983 claim. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002). For these reasons, Bender's evaluation does not meet the close nexus test.

### 3.   The Public Function Test

Finally, Bender's evaluation does not meet the public function test, which requires Jordan to allege that the private party exercised powers "traditionally the exclusive prerogative of the State." *Turturro,* 334 F. Supp. 2d at 396 (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982)); *Jackson,* 419 U.S. at 353, 95 S.Ct. at 454. In essence, the action must be "so clearly governmental in nature as to amount to a public function." *See Turturro,* 334 F. Supp. 2d at 396 (citing *Schlein v. Milford Hospital, Inc.,* 561 F.2d 427, 429 (2d Cir. 1977)) (internal quotations omitted). "The public function test as applied is quite stringent and under the doctrine an extraordinarily low number of functions have been held to be public." *Doe v. Harrison,* 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003) (quoting

*Ruhlmann v. Ulster County Dept. of Social Services*, 234 F. Supp. 2d 140, 166 (N.D.N.Y. 2002))
(internal quotation marks omitted).

Jordan does not allege that the power to determine what conclusions to include in a
medical evaluation is a power exercised exclusively by the State. Nor could he. Quite to the
contrary, in this country, a doctor's practice of medicine is much more common in a private
capacity. Even as medicine becomes more streamlined, in this country it is never deemed a
public function. Thus, Jordan has not alleged a public function.

Jordan's complaint fails to allege any of the bases for finding a Bender liable as a state
actor. Because § 1983 claims can only be lodged against those who act under the color of state
law, Jordan's allegations against Bender fail to the extent he makes claims for violations of his
constitutional rights. Because we have determined that Dr. Bender was not a state actor, we need
not reach the issue of whether he was entitled to judicial immunity.[7]

### C. Jordan Does Not Adequately Allege A Medical Malpractice Claim

To the extent that Jordan alleges a medical malpractice theory,[8] he fails to state a claim
against Bender. The law is well-established that a physician-patient relationship is necessary for

---

[7] Furthermore, it is unclear whether immunity would be available to Bender. *See, e.g., Elmasri
v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) ("Liability for participating in a Section
1983 conspiracy may be imposed on private individuals even if the state actor is immune from
liability. Thus, a private individual claiming immunity who is charged with conspiring with a
state actor must establish his own basis for invoking an immunity defense.") (internal citations
omitted). Nevertheless, "the initial and threshold issue here is not immunity but whether a state-
appointed counsel or physician can be liable under §1983 in an action in federal court, or,
otherwise stated, [whether] the representation by the counsel and the action of the physician in
such a situation [is] state action." *Hall v. Quillen*, 631 F.2d 1154, 1155-1156 (4th Cir. 1980)
(finding no §1983 liability against doctor who, under court appointment, examined plaintiff in
involuntary confinement proceeding because there was no state action).

[8] To the extent that Plaintiff would try to construe his claim as one of negligence, it should not be
so construed. "The distinction between ordinary negligence and malpractice turns on whether

a malpractice claim. A claim of medical malpractice is typically based on the existence of a physician-patient relationship, which gives rise to a duty of care. *Lee v. City of New York*, 162 A.D.2d 34, 36 (1990) (citing *LoDico v Caputi*, 129 AD2d 361; *Ferguson v Wolkin*, 131 Misc. 2d 304). Where, as here, the physician is employed or retained by a third party to conduct an examination for the benefit of the third party, there must be something more than a mere examination in order to find a physician-patient relationship. *Lee*, 162 A.D.2d at 37. But an implied physician-patient relationship may arise if the physician either affirmatively treats the examinee or affirmatively advises the examinee as to a course of treatment.[9] *Badolato v. Rosenberg*, 67 A.D.3d 937, 938 (N.Y. App. Div. 2009) (citations omitted). Thus, absent any affirmative treatment or advice to the plaintiff, not even an implied physician-patient relationship existed between the plaintiff and Bender such that Bender would have owed the plaintiff a duty of care. *See Lee*, 162 A.D.2d at 37.

---

the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts." *D'Elia v. Menorah Home and Hosp. for Aged and Infirm*, 51 A.D.3d 848, 850-851, 859 N.Y.S.2d 224, 226 - 227 (N.Y. App. Div. 2008) (citations omitted). Where, as here, the complaint challenges a doctor's performance of functions necessary to diagnosis to a patient, such as taking a medical history and determining the need for restraints, it sounds in medical malpractice. Id. at 850-851, 859 N.Y.S.2d 224, 226-227; *Weiner v. Lenox Hill Hospital*, 88 N.Y.2d 784, 788, 673 N.E.2d 914, 650 N.Y.S.2d 629 (1996) ("[A] claim sounds in medical malpractice when the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician....By contrast, when "the gravamen of the complaint is . . . the hospital's failure in fulfilling a different duty, the claim sounds in negligence".)

[9] While by no means dispositive, the evaluation disclaimed that the examination was conducted "in accordance with the restrictive rules concerning an independent medical examination" and "[i]t is, therefore understood that no doctor/patient relationship exists or is implied by the medical examination." (Dkt. 58, Ex. 1).

On this point alone, Plaintiff's medical malpractice claim fails because there was no affirmative advice given. *See Badolato*, 67 A.D.3d at 938 ("For affirmative advice to be actionable, the plaintiff must establish that the advice was incorrect, that it was foreseeable that the plaintiff would rely on the advice, and that the plaintiff detrimentally relied on the advice.")

Bender's alleged casual answer to a hypothetical question does not constitute a medical conclusion nor does it constitute advice about Jordan's condition. Jordan's choice not to testify at his trial was his own as a defendant's right to testify on his own behalf in a criminal case is personal" and can only be waived by the defendant. *See Chang v. U.S.*, 250 F.3d 79, 82 -83 (2d Cir. 2001) (citing *Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997)). The decision not to testify was not based on medical necessity, which was the purview of Bender's evaluation. (Dkt. 58, Ex. 1 ("The examination was done . . . for the purpose of determining *whether there was any neurological condition that would affect his ability to give court testimony* at trial.") (emphasis added)). The doctor determined that there was no neurological reason that would prevent Jordan from testifying should he have chosen to do so.

Assuming *arguendo* that there was affirmative advice given in the form of the evaluation concluding that there was no evidence of a neurological condition that would interfere with his ability to give court testimony, in determining affirmative advisement, the subject of concern is the *plaintiff's* justifiable reliance on the findings, not the third party's. *See, e.g., Badolato*, 67 A.D.3d 937, 938 (affirming denial of summary judgment that there was no physician-patient relationship where defendant doctor negligently and prematurely advised plaintiff that he was fit to return to work without restrictions on any type of physical activity, causing plaintiff to reinjure his back); *Heller v Peekskill Community Hosp.*, 198 A.D.2d 265, 266, 603 N.Y.S.2d 548 (N.Y.

App. Div. 1993) (plaintiff stated a claim where doctor directly advised him that plaintiff was fit to return to work without restriction, which caused or exacerbated Plaintiff injuries, was both incorrect and foreseeably relied upon). Bender's evaluation was after the trial had already been conducted and after Jordan decided not to testify. Because the evaluation was after the fact, it could not have influenced Jordan's decision not to testify. Therefore, Jordan's claim for medical malpractice is properly dismissed because he did not reasonably rely on any purported advice from Bender. Thus, there is no basis for a medical malpractice claim and the claims against Bender must be dismissed for failure to state a claim.

## CONCLUSION

The Federal Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 52) is GRANTED for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) as to the FTCA claims and constitutional claims against BOP, USP-Marion and Waller in his official capacity for monetary damages and/or equitable relief, and is GRANTED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for the claims against Waller in his individual capacity for monetary damages, and the Complaint is dismissed in its entirety with prejudice. Dr. Bender's Motion to Dismiss the Complaint is likewise GRANTED (Dkt. 57).

**SO ORDERED.**

Dated:         March 18, 2013
               New York, New York

_____
United States District Judge

25